## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER VINCENT NICOLAIS**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 23-7094**

**BRAD CHERAMIE, ET AL.**                           **SECTION: "T"(3)**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Christopher Vincent Nicolais, a state pretrial detainee, filed this *pro se* and *in forma pauperis* federal civil action pursuant to 42 U.S.C. § 1983. He sued numerous defendants, asserting claims related to criminal charges brought against him in various Louisiana parishes.

This Report and Recommendation addresses only the three motions to dismiss currently pending before the Court: (1) a motion filed by Alexis Taylor, Rec. Doc. 22; (2) a motion filed by the Louisiana State Licensing Board and Compliance Director "Greg," Rec. Doc. 27; and (3) a motion filed by Jefferson Parish District Attorney Paul D. Connick, Jr., and Assistant District Attorney Michael Morales, Rec. Doc. 36.[1] Those motions seek dismissal pursuant to Rules 12(b)(1), 12(b)(5), and/or 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) concerns the Court's jurisdiction. Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Association of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)

---

[1] Plaintiff's claims against the remaining defendants are not addressed herein. Those claims will be addressed in due course pending further screening and/or development.

(quotation marks omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

Rule 12(b)(5) concerns the adequacy of service. "A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process. The party making service has the burden of demonstrating its validity when an objection to service is made." *Holly v. Metropolitan Transit Authority*, 213 F. App'x 343, 344 (5th Cir. 2007); *accord Calhoun v. City of Houston Police Department*, No. 20-20311, 2021 WL 1326703, at *2 (5th Cir. Apr. 8, 2021). A federal district court "enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process." *George v. U.S. Department of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986).

Rule 12(b)(6) concerns the adequacy of the plaintiff's statement of his claims and allows a defendant to move for dismissal when the plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). Nonetheless, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation, footnote, and quotation marks omitted).

2

## I.    Motion Filed by Alexis Taylor

In her motion to dismiss, defendant Taylor argues that the claims against her should be dismissed because "a review of plaintiff's complaint shows that plaintiff has pled no facts to state a claim to relief against [her] – much less one that is 'plausible on its face.'"[2] She is correct.

Although Taylor is listed as a defendant both in the caption of the original complaint and in the section identifying the defendants,[3] she is not otherwise mentioned in the document. That will not do. When a plaintiff merely lists a defendant in a complaint but makes no factual allegations against her, he has failed to state a claim against that defendant. *See Tuley v. Heyd*, 482 F.2d 590, 594 (5th Cir. 1973) (noting that the mere inclusion of names and notations of office in the caption does not suffice to state a claim); *Guillotte v. Lafourche Parish*, Civ. Action No. 21-1400, 2022 WL 775339, at *4 (E.D. La. Feb. 11, 2022) ("Merely listing a defendant in a complaint without asserting any factual allegations necessary to connect that defendant to a specific claim does not suffice for pleading purposes under Fed. R. Civ. Proc. 8."), *adopted*, 2022 WL 742473 (E.D. La. Mar. 11, 2022); *Jones v. Ledet*, No. 19-10969, 2019 WL 6040091, at *3 (E.D. La. Oct. 22, 2019) ("Where ... a plaintiff has merely listed individuals as defendants in the complaint but made no factual allegations against them, no cognizable individual-capacity claim has been stated

---

[2] Rec. Doc. 22-2, p. 2.
[3] Rec. Doc. 3, pp. 1 and 4.

against those defendants."), *adopted*, 2019 WL 6036706, at *1 (E.D. La. Nov. 14, 2019).

Factual specificity is required. Indeed, it is beyond cavil that "[p]laintiffs suing governmental officials in their individual capacities ... must allege **specific conduct** giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege **specific facts** giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (emphasis added; citation omitted)).[4]

Because plaintiff's original complaint contains no factual allegations whatsoever against Taylor, it is clearly insufficient to state a claim against her. That, however, does not necessarily end the Court's inquiry.

Instead, further analysis is required because plaintiff, in his response to Taylor's motion, supplies a factual allegation concerning her, to wit:

> On or around 5/15/23 During The Plaintiff's Court Hearing In Tangipahoa Parish, The Honorable Brian Abels Court Room, ADA Alexis Taylor Informed The Judge That The Plaintiff Was Under Investigation In Jefferson Parish and Requested Judge Abels Deny Lifting The Hold, Attachment, and Keep The Plaintiff Incarcerated On a FTA Contempt Which The Judge Denied Reinstating of The Original Bail and Bond From 4/17/23 – 9/28/23 For Six Months. Because of The False, Malicious Investigation and Prosecution of ADA Michael Morales (JPC) Direct Communication with ADA, Alexis Taylor (Tangi) and a

---

[4] Although plaintiff does not specify in his complaint whether he is suing Taylor in her individual capacity or her official capacity, the Court assumes that he intends the former. That assumption is premised on the fact that Taylor is only an **assistant** district attorney. As such, she is not a policymaker for the Tangipahoa Parish District Attorney's Office and, therefore, swould not be a proper defendant with respect to an official-capacity claim. *See Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006).

conflict of Interest Per Detective Brad Charamie (Gretna, P.D.) and Finally, His Mother Mrs. Debra Cheramie.[5]

In her reply to that response, Taylor counters that even if the Court considers that new allegation as an amendment to the complaint,[6] she is still entitled to dismissal because her absolute prosecutorial immunity protects her against any claim premised on the new allegation.[7] She is correct on that point as wel.

It is black-letter law that absolute prosecutorial immunity protects prosecutors against claims based on actions they have taken as the state's advocates in criminal court. As the United States Fifth Circuit Court of Appeals has explained:

> A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process. …
>
> … Our decisions applying those of the Supreme Court make clear that prosecutors enjoy absolute immunity for acts taken to initiate prosecution, and that this absolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently.

---

[5] Rec. Doc. 49, p. 4.

[6] It appears that the new allegation could in fact be deemed an amendment. Because plaintiff is proceeding without counsel in this matter, the Court must consider his "complaint under the less stringent standards applicable to pro se litigants." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). Therefore, the Court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Id.* Accordingly, when ruling on the defendants' motions to dismiss, the Court should consider any additional allegations in his oppositions that embellish the original complaint's averments. *See id.*; *see also Lozano v. Schubert*, 41 F.4th 485, 490-91 (5th Cir. 2022); *Brenckle v. MacFay*, Civ. Action No. 17-13500, 2018 WL 3340382, at *3 (E.D. La. Apr. 2, 2018), *adopted*, 2018 WL 3329075 (E.D. La. July 6, 2018).

[7] Rec. Doc. 51, pp. 2-3.

*Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (citations, quotation marks, and brackets omitted). Absolute prosecutorial immunity is therefore sweepingly broad. In fact, "the Fifth Circuit has held prosecutors absolutely immune for actions ranging from withholding exculpatory evidence, disobeying discovery orders, and fabricating evidence, to charging without probable cause pursuant to a constitutionally deficient indictment, and committing prosecutorial misconduct." *Willis v. Bastrop County*, No. A-18-CV-0093, 2019 WL 252051, at *5 (W.D. La. Jan. 17, 2019) (citing *Green v. Texas Government*, 704 F. App'x 386, 386-87 (5th Cir. 2017)), *adopted*, 2019 WL 2572538 (W.D. Tex. Feb. 11, 2019). Therefore, when a plaintiff is challenging a prosecutor's actions "intimately associated with the judicial phase of the criminal process," his claims must fail because the prosecutor's actions are ones to which "absolute immunity appl[ies] with full force." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).[8]

Accordingly, as Taylor correctly argues, her immunity protects her from plaintiff's claim challenging her actions at the bail hearing. *See, e.g., Waldrop v. Bethancourt*, Civ. Action No. 10-1962, 2010 WL 3312501, at *3 (E.D. La. July 21,

---

[8] The United States Supreme Court has opined:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

*Imbler*, 424 U.S. at 427-28 (footnote omitted).

2010), *adopted*, 2010 WL 3312583 (E.D. La. Aug. 18, 2010); *Sosa v. Strain*, Civ. Action No. 06-9040, 2007 WL 1521441, at *6 (E.D. La. May 22, 2007); *see also Kirby v. Dallas County Adult Probation Department*, 359 F. App'x 27, 30-31 (10th Cir. 2009); *Dillberg v. County of Kitsap*, 76 F. App'x 792, 794 (9th Cir. 2003); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2nd Cir. 1995); *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983).

For all these reasons, Taylor's motion to dismiss should be granted.

## II.    Motion Filed by the Louisiana State Licensing Board and Compliance Director

In their motion to dismiss, the Louisiana State Licensing Board and Compliance Director  (named as "Greg" by plaintiff) argue that the claims against them should be dismissed because (1) the compliance director was not properly served[9] and (2) "the Plaintiff has failed to plead facts against 'Greg' or the LSLBC sufficient to state a claim to relief that is plausible on its face."[10] In his response to that motion, plaintiff does not expressly address either of those defenses.  He does, however, clarify that:  (1)  the compliance director's name is actually Brad Hassert[11] and (2) after communicating with Jefferson Parish Assistant District Attorney Michael Morales, Hassert allegedly "Refused to Renew Plaintiff's Residential Home

---

[9] Rec. Doc. 27-2, p. 3.

[10] *Id.* at pp. 3-4.

[11] Plaintiff also filed a separate motion to amend the complaint to properly identify Compliance Director "Greg" as Brad Hassert. Rec. Doc. 30. The Court has granted leave for that amendment.

Improvement License/Certificate because of 'Pending Allegations' against Plaintiff ....."[12] The defendants filed a reply, again reiterating the argument that plaintiff has failed to state a cognizable claim against them.[13]

To the extent that the defendants are seeking dismissal pursuant to Rule 12(b)(5), a defense which challenges the legal sufficiency of the service of process, the undersigned declines to recommend dismissal given that plaintiff is a *pro se* litigant. As one court has observed:

> Although a plaintiff's *pro se* status is not a license to ignore the Federal Rules of Civil Procedure, *pro se* litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process. Consistent with that principle, courts often decline to dismiss a *pro se* plaintiff's case for defective service without first affording the plaintiff the opportunity to correct any errors he or she may have made.

*Johnson-Richardson v. University of Phoenix*, 334 F.R.D. 349, 357 (D.D.C. 2020) (citations, quotation marks, and ellipsis omitted); *accord Lee v. Deutsche Bank National Trust Co.*, Civ. Action No. 18-2887, 2019 WL 1057015, at *3 (E.D. La. Mar. 6, 2019) (allowing an addition opportunity to effect proper service given "the Fifth Circuit's policy of leniency towards *pro se* plaintiffs").

Accordingly, even if a Rule 12(b)(5) dismissal would be otherwise appropriate, the undersigned would first allow plaintiff an opportunity to correct any service defects before recommending dismissal of his claims pursuant to Rule 12(b)(5). However, that is unnecessary with respect to the instant motion, in that the motion alternatively seeks dismissal under Rule 12(b)(6). Because the argument regarding

---

[12] Rec. Doc. 49, p. 4.
[13] Rec. Doc. 53.

the alternative ground for dismissal is meritorious, it is more expedient to recommend dismissal on that ground. *See Perez v. Miller*, Civ. Action No. 21-0048, 2022 WL 557491, at *4 (E.D. La. Feb. 1, 2022) (noting that an attempt to remedy service "would only delay the inevitable" because, even if proper service were to be effected, the claims would still subject to dismissal on the alternative grounds identified in the motion), *adopted*, 2022 WL 539287 (E.D. La. Feb. 23, 2022).

As the defendants correctly note, plaintiff's claim against them stems from the fact that Hassert (previously identified as "Greg") "refused to renew Copper Roofing, LLC's Residential Home Improvement Certificate/License."[14] However, as the defendants also correctly note, that allegation is insufficient to state a claim under 42 U.S.C. § 1983. Rather, "[t]o state a claim under § 1983, a plaintiff must allege the violation of **a right secured by the Constitution and laws of the United States** ...." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff has not alleged a violation of a federal right. Instead, he is seemingly attempting to use this federal civil rights lawsuit to circumvent the process set forth in state law to challenge administrative decisions concerning licensure. *See* La. Rev. Stat. Ann. § 37:2158(F) ("In accordance with the provisions of the Administrative Procedure Act, R.S. 49:950 et seq., any person who applies for and is denied a license by the board, or whose license has been revoked, rescinded, or suspended, may appeal to the Nineteenth Judicial District Court in and for the parish of East Baton Rouge to determine whether the board has abused its discretion."). That is improper.

---

[14] Rec. Doc. 3-1, p. 1.  Plaintiff alleges that he is the owner of Copper Roofing, LLC.

Moreover, in any event, it must be noted that plaintiff indicates in his complaint that it was a **corporation's** license that was not renewed. If that is so, plaintiff, who is not an attorney, cannot not assert **any** claim on behalf of the corporation. "The law is clear that a corporation as a fictional legal person **can only be represented by licensed counsel**. This is so even when the person seeking to represent the corporation is its president and major stockholder." *In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) (emphasis added; citations omitted); *accord Industrial Maritime Carriers (Bahamas) Inc v. Luxor California Exports Corp.*, No. 97-20632, 1998 WL 92458, at *1 (5th Cir. Feb. 11, 1998) ("A corporation can be represented only by legal counsel, and cannot appear in court on a *pro se* basis."). Therefore, even if § 1983 afforded a remedy in this instance, plaintiff, acting *pro se*, could not seek that remedy on behalf of the corporation.

For all these reasons, the motion to dismiss should be granted and the claims against the Louisiana State Licensing Board and Brad Hassert (originally named as Compliance Director "Greg") should be dismissed.

## III.  Motion Filed by Jefferson Parish District Attorney Paul D. Connick, Jr., and Assistant District Attorney Michael Morales

In their motion to dismiss, defendants Connick and Morales argue that the claims against them should be dismissed because (1) the Court has no subject matter jurisdiction because the claims against them are clearly frivolous,[15] (2) any individual-capacity claims against them fail because they are protected by their

---

[15] Rec. Doc. 36-1, pp. 4-5.

immunity,[16] (3) any official-capacity claims against them fail because plaintiff has not alleged that an official policy or custom resulted in a constitutional violation,[17] (4) the *Younger* abstention doctrine bars injunctive relief,[18] and (5) *Heck* bars injunctive relief and monetary damages.[19] In his response to the motion, plaintiff did not expressly address those defenses,[20] and the defendants have not filed a reply to that response.

The context of the claims against Connick and Morales is made apparent in the administrative grievance attached to plaintiff's complaint. In that grievance, plaintiff recounts details concerning his prosecution on what he calls "Arrest #1" and "Arrest #3." The prosecutions on those arrests took place in Jefferson Parish, Louisiana. Plaintiff was acquitted at trial concerning "Arrest #1" and is still awaiting trial on "Arrest #3."

In connection with their motion to dismiss, the defendants supplied the applicable court records to provide additional context.[21] Those records show that on January 4, 2023, plaintiff was found not guilty on a charge of residential contractor

---

[16] *Id.* at pp. 5-7.

[17] *Id.* at p. 8.

[18] *Id.* at pp. 8-10.

[19] *Id.* at pp. 10-11.

[20] Rec. Doc. 49.

[21] Because the records from the state court proceedings are public records of which this Court may take judicial notice, they are properly considered in connection with the Rule 12(b)(6) motion. *See, e.g., Basic Capital Management, Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020); *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020); *Krystal One Acquisitions, L.L.C. v. Bank of America, N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020); *Ducksworth v. Rook*, 647 F. App'x 383, 385 n.1 (5th Cir. 2016).

fraud in case number 22-1453.[22] The records also show that plaintiff has since been charged with the additional following offenses: (1) one count of possession with intent to distribute methamphetamine in case number 23-1545;[23] (2) three counts of residential contractor fraud, one count of insurance fraud, one count of first degree injuring public records, one count of obstruction of justice, one count of second degree injuring public records, and one count of conspiracy to obstruct justice in case number 23-2968;[24] (3) seven counts of residential contractor fraud, four counts of insurance fraud, two counts of filing or maintaining false public records, one count of obstruction of justice, one count of conspiracy to obstruct justice, three counts of filing false public records, and one count of extortion in case number 24-1064.[25]

Turning now to the defendants' arguments in support of their motion, the Court will first consider the argument that it lacks subject matter jurisdiction because plaintiff's claims against them are "patently frivolous."[26] In support of that argument, the defendants cite *Carmichael v. United Technologies Corp.*, 835 F.2d 109 (5th Cir. 1988).[27] In *Carmichael*, the United States Fifth Circuit Court of Appeals held:

> Ordinarily, when a Rule 12(b)(1) jurisdictional challenge attacks the merits of the underlying claim, the proper procedure is to find jurisdiction and then treat the challenge on the merits as a motion for summary judgment. The Supreme Court has carved out a narrow exception to this rule, however, "where the alleged claim under the

---

[22] Rec. Doc. 36-7.
[23] Rec. Doc. 36-3.
[24] Rec. Doc. 36-4.
[25] Rec. Doc. 36-5.
[26] Rec. Doc. 36, p. 1.
[27] Rec. Doc. 36-1, p. 4.

> Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). As we explained in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), this exception is "intended to allow jurisdiction dismissals only in cases where the federal claim is clearly immaterial or insubstantial ... the *Bell v. Hood* standard is met only where the plaintiff's claim has no plausible foundation or 'is clearly foreclosed by a prior Supreme Court decision.'" 645 F.2d at 416 (quoting *Bell v. Health-Mor, Inc.*, 549 F.2d 342 (5th Cir. 1977)).

*Carmichael*, 835 F.2d at 114.

Defendants essentially argue that the foregoing "narrow exception" applies because they are entitled to prosecutorial immunity. But because "arguments for immunity are attacks on the existence of a federal cause of action," such arguments should be considered under Rule 12(b)(6), not Rule 12(b)(1). *Morrison v. Walker*, 704 F. App'x 369, 372 n.5 (5th Cir. 2017). Accordingly, the argument that plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) lacks merit. *See, e.g., Narcisse v. Ronquille*, Civ. Action No. 20-2204, 2021 WL 328633, at *2 (E.D. La. Jan. 14, 2021), *adopted*, 2021 WL 327239 (E.D. La. Feb. 1, 2021).

Yet the defendants' second argument, namely, that they are protected by prosecutorial immunity with respect to any individual-capacity claims against them, is meritorious. As already explained *supra*, "[a] prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in [his] role as advocate for the state in the courts, or when [his] conduct is intimately associated with the judicial phase of the criminal process." *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quotation marks omitted). Therefore, the defendants' absolute prosecutorial immunity protects them from plaintiff's individual-capacity claims

challenging their actions as the state's advocates in his criminal prosecutions. That is true even with respect to their actions in case number 22-1453, which ended in plaintiff's acquittal. *See, e.g., Mowbray v. Cameron County*, 274 F.3d 269, 276 (5th Cir. 2001) (prosecutor enjoyed absolute immunity even though prisoner's conviction was set aside and she was acquitted on retrial); *see also Hutchinson v. Fleischman*, Civ. Action No. 22-78, 2022 WL 4112234, at *4-5 (E.D. La. July 26, 2022), *adopted*, 2022 WL 4104564 (E.D. La. Sept. 8, 2022).

The defendants' third argument, namely, that any official-capacity claims fail because plaintiff has not alleged that an official policy or custom resulted in a constitutional violation, is likewise meritorious. If plaintiff is attempting to assert an official-capacity claim against Connick,[28] no such claim has been properly pled. The United States Fifth Circuit Court of Appeals has held:

> For purposes of "official capacity" suits under § 1983, the district attorney's office resembles other local government entities. Therefore, we advert to the Supreme Court's development of principles for determining whether a municipality or other local government entity should be held liable under 42 U.S.C. § 1983 for the constitutional tort of its employee.

---

[28] Again, as already explained, only the District Attorney himself (here, Connick) would be the proper defendant with respect to an official-capacity claim because he "is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999). In that assistant district attorneys are not policymakers for the Jefferson Parish District Attorney's Office, Morales would not be a proper defendant with respect to an official-capacity claim. *See Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006); *see also Bauer v. Somoza*, Civ. Action No. 22-4595, 2022 WL 18539816, at *5 n.6 (E.D. La. Nov. 23, 2022), *adopted*, 2023 WL 1420048 (E.D. La. Jan. 30, 2023).

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999). The Fifth Circuit has further held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official copy or custom.

*Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003).

In the instant case, plaintiff does not allege that any purported violation here stemmed from an official policy or custom, much less identify such a policy or custom. Therefore, no official-capacity claim has been properly stated against Connick. *See, e.g., Dantin v. Larose*, Civ. Action No. 18-11233, 2018 WL 7499824, at *2 (E.D. La. Dec. 28, 2018), *adopted*, 2019 WL 969990 (E.D. La. Feb. 28, 2019).

The defendants' fourth argument is that the *Younger* abstention doctrine bars injunctive relief with respect to plaintiff's ongoing criminal prosecutions. To the extent, if any, that plaintiff is in fact seeking such injunctive relief, *Younger* abstention would be appropriate for the following reasons.

In *Younger v. Harris*, 401 U.S. 37 (1971), the U.S. Supreme Court "held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989). The Supreme Court observed:

> That far-from-novel holding was based partly on traditional principles of equity, but rested primarily on the even more vital consideration of comity. As we explained, this includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* (citations and quotation marks omitted). Indeed, in *Younger*, the Supreme Court opined:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted.

*Younger*, 401 U.S. at 43-44.

"Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in

16

regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quotation marks omitted).

Here, all those requirements are met. First, plaintiff's state criminal proceedings are ongoing, and the state is earnestly prosecuting the charges against him. Second, "the underlying state proceeding concerns the enforcement of state criminal laws, something in which the state has a strong interest." *Id.* And, third, there is no doubt that plaintiff will have an ample opportunity in his state criminal proceedings to challenge any alleged inappropriate behavior by the prosecutors.[29] Accordingly, *Younger* abstention would be appropriate in this case.

Out of an abundance of caution, the Court notes also that there is a "bad faith" exception to the *Younger* abstention doctrine. The U.S. Court of Appeals for the Fifth Circuit has explained:

> A prosecution is taken in bad faith if state officials proceed "without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *accord Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988). "[T]he 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). It is [the plaintiff's] burden to establish actual proof of bad faith. *Hensler v. Dist. Four Grievance Comm. of State Bar of Tex.*, 790 F.2d 390, 391 (5th Cir. 1986).

---

[29] The fact that plaintiff "is likely to be unsuccessful in raising his constitutional claims in state court that is irrelevant. The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." *Gates*, 885 F.3d at 880. In this case, plaintiff does not even contend that he **cannot raise** his constitutional claims in the state court.

*Gates*, 885 F.3d at 881.  Plaintiff has pointed to no actual evidence of such bad faith in this case.

Although plaintiff believes that he should not be prosecuted for his alleged crimes, it must be remembered that there is a "longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Hartman v. Moore*, 547 U.S. 250, 263 (2006). Moreover, as the United States Supreme Court has explained:

> In our criminal justice system, the Government retains broad discretion as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Wayte v. U.S.*, 470 U.S. 598, 607 (1985). There is simply no actual evidence nor even -pleaded factual allegations that the prosecutors in this case have exercised their discretion improperly.

As to the defendants' fifth argument, namely, that plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994),[30] the Court need not address that

---

[30] In *Heck*, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

alternative argument given the foregoing findings that dismissal is appropriate on other grounds. Nevertheless, the Court notes that *Heck* is inapplicable to any claims arising from plaintiff's prosecution in case number 22-1453 because that prosecution ended in his acquittal. *See, e.g., Shackleford v. Gutermuth*, 93 F. App'x 804 (6th Cir. 2004) (finding *Heck* inapplicable because a jury's acquittal means that a finding for plaintiff on her § 1983 claim would not invalidate an existing criminal charge or conviction). *Heck* is likewise inapplicable to claims arising from plaintiff's remaining prosecutions, because those criminal proceedings are still ongoing. *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (rejecting the suggestion that *Heck* bars "an action which would impugn *an anticipated future conviction*"); *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (noting that the Supreme Court has "refused to extend *Heck*'s application to pending criminal matters"); *Moses v. Jefferson Parish*, Civ. Action No. 14-2379, 2015 WL 772594, at *5 (E.D. La. Feb. 23, 2015) ("*Heck* does not currently apply because plaintiff's criminal charge is still pending.").

## IV.    Remaining Claims

Plaintiff's remaining claims will be addressed at a later date after further screening and/or development.  Accordingly, all other claims should remain referred to the undersigned United States Magistrate Judge.

---

plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87 (footnote omitted). *Heck* has since been extended also to bar claims for declaratory and injunctive relief. *See, e.g., Walton v. Parish of LaSalle*, 258 F. App'x 633, 633-34 (5th Cir. 2007); *Collins v. Ainsworth*, 177 F. App'x 377, 379 (5th Cir. 2005); *Shaw v. Harris*, 116 F. App'x 499, 500 (5th Cir. 2004).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the pending motions to dismiss, Rec. Docs. 22, 27, and 36, be **GRANTED** and that plaintiff's claims against Alexis Taylor, the Louisiana State Licensing Board, Brad Hassert (originally named as Compliance Director "Greg"), Jefferson Parish District Attorney Paul D. Connick, Jr., and Assistant District Attorney Michael Morales be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's other claims remain referred to the undersigned United States Magistrate Judge pending further screening and/or development.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 12th day of August, 2024.

EVA J. DOSSIER
**UNITED STATES MAGISTRATE JUDGE**